| | |
|---|---|
| 1 | |
| 2 | |
| ... | |

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAS ENERGY, INC., a Delaware corporation,<br><br>                         Plaintiff,<br><br>  vs.<br><br>SAN DIEGO GAS & ELECTRIC CO., a California corporation; SEMPRA ENERGY, a California corporation; and PALOMAR ENERGY, LLC, a Delaware limited liability company,<br><br>                         Defendants. | CASE NO. 12cv2777-GPC(BGS)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**<br><br>[Dkt. No. 30.] |

      Pending before the Court is Plaintiff TAS Energy, Inc.'s ("TAS") motion for leave to file an amended complaint in order to assert a patent that did not issue until March 19, 2013. (Dkt. No. 30.) Defendant San Diego Gas & Electric Co. ("SDGE") filed an opposition on June 7, 2013. (Dkt. No. 37.) On June 21, 2013, Plaintiff filed a reply. (Dkt. No. 42.) After a review of the briefs, the documentation, and the applicable law, the Court GRANTS Plaintiff's motion for leave to file an amended complaint.

## Background

      On November 16, 2012, TAS filed this action alleging violations of three related patents with a total of forty-nine (49) claims. (Dkt. No. 1, Compl.) Plaintiff is a

"global leader in industrial temperature regulation, such as systems for cooling gas turbine-driven power plants." (Id. ¶ 10.) Specifically, Plaintiff has developed technology that cools the inlet air of gas turbines used to generate electricity and by cooling turbine inlet air, the efficiency of the gas turbines can be increased. (Id.) Plaintiff's research and development has led to multiple patents. (Id.) At issue in this case are U.S. Patent Nos. 6,318,065 (the '065 patent), 6,470,686 (the '686 patent), and 6,769,258 (the '258 patent). (Id.)

Defendant owns and operates the Palomar Energy Center ("PEC") near Escondido, California. (Id. ¶ 12.) In 2006, the PEC became operational and requested bids from contractors to provide a better cooling system. (Id.) Multiple parties, including TAS Energy and General Electric Co., provided confidential bids. (Id. ¶ 13.) TAS's bid included notification that the cooling system was "MANUFACTURED UNDER ONE OR MORE OF THE FOLLOWING U.S. PATENTS: 6318065, 6470686, 6769258." (Id. ¶ 14.) Defendant selected General Electric Co. to build and install a new cooling system at the PEC. (Id. ¶ 15.) Plaintiff alleges that this new cooling system uses technology protected by TAS' patents. (Id.)

On March 12, 2010, TAS applied to reissue a fourth related patent, No. 7,343,746 ("746 patent"), with amended and new claims on the ground it was flawed because the "patentee claim[ed] more or less, than he had the right to claim." (Dkt. No. 37-1, Cleveland Decl., Ex.1.) The U.S. Patent No. RE44,079 (the '079 patent) reissued on March 19, 2013, four months after the complaint was filed.

Shortly thereafter, on April 4, 2013, TAS asked SDGE to consent to the filing of a First Amended Complaint to include the '079 patent; however, Defendant refused to consent. (Dkt. No. 30-2, King Decl. ¶ 3, Ex. 2.) Hence, Plaintiff filed the instant motion on April 22, 2013. (Dkt. No. 30.)

/ / / /
/ / / /
/ / / /

## Discussion

**A.    Legal Standard Under Federal Rule of Civil Procedure 15(a)**[1]

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint after a responsive pleading may be allowed by leave of the court and such leave "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Granting leave to amend rests in the sound discretion of the trial court. Internat'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines, 761 F.2d 1386, 1390 (9th Cir. 1985). This discretion must be guided by the strong federal policy favoring the disposition of cases on the merits and permitting amendments with "extreme liberality." DCD Programs Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004) (citing Nunes v. Ashcroft, 348 F.3d 815, 818 (9th Cir. 2003)). In practice, however, courts more freely grant plaintiffs leave to amend pleadings in order to add claims than new parties. Union Pacific R.R. Co. v. Nevada Power Co., 950 F.2d 1429, 1432 (9th Cir. 1991).

In this case, the parties dispute whether the proposed amendment would be futile and cause prejudice.

**B.    Futility**

Defendant argues that the proposed amendment is futile since the newly alleged claims are not "substantially identical" to the original claims and they are subject to the intervening rights doctrine. Plaintiff contends that determination whether the intervening rights doctrine applies is premature at this early stage of the proceedings

---

[1] Defendant argues that Plaintiff filed an improper motion. It asserts that Plaintiff should have moved to supplement, not amend its complaint pursuant to Federal Rule of Civil Procedure 15(d), because it seeks to allege infringement of a patent that issued after the date of the original complaint. While Plaintiff does not dispute Defendant's assertion, it argues that the same legal standard applies and cases where motions to add new patents to an existing lawsuit do not make this distinction.

and that leave to amend should be liberally construed.

"[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988). Courts ordinarily do not consider the validity of a proposed amended pleading in deciding whether to grant leave to amend and defer consideration of challenges to the merits of a proposed amendment until after leave to amend is granted and the amended pleadings are filed. Netbula, LLC v. Distinct Corp., 212 F.R.D. 534, 539 (N.D. Cal. 2003) (citation omitted).

In general, an original patent is surrendered upon the issuance of a reissue patent and can no longer be infringed. Seattle Box Co. v. Indus. Crating & Packing, Inc., 731 F.2d 818, 827 (Fed. Cir. 1984). 35 U.S.C. § 252 governs the effects of a reissued patent on pending litigation.

> The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are substantially identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

35 U.S.C. § 252. Therefore, reissued claims that are "substantially identical" to the ones in the original patent "shall constitute a continuation . . . and have effect continuously from the date of the original patent." Id.; see also Bloom Eng'g Co., Inc. v N. Am. Mfg. Co., Inc., 129 F.3d 1247, 1250 (Fed. Cir. 1997) (when reissued claims are identical to the ones in the original patent, they shall "have effect continuously from the date of the original patent.").

"'Identical' does not mean verbatim, but means at most without substantive change." Bloom Eng'g Co., 129 F.3d at 1250. An amendment that "clarifies the text of the claim or makes it more definite without affecting its scope is generally viewed as identical for purposes of § 252. Id. (citation omitted). Courts must look at the

1  "scope of the original and [reissued] claims in light of the specification, with attention
2  to the references that occasioned the [reissue] as well as the prosecution history and
3  any other relevant information." Id. (citing Laitram Corp., v,. NEC Corp., 952 F.2d
4  1357, 1361 (Fed. Cir. 1991)). Therefore, "the issue of whether the claims are
5  substantially identical is most appropriately decided after claim construction" and not
6  at the pleading stage. See Artemi Ltd. v Safe-Strap Co., Inc., –F. Supp.2d –, 2013 WL
7  2367874, at * 4 (D.N.J. May 30, 2013) (citing cases where courts have refused to rule
8  on whether the claims are substantially identical before claim construction hearing).

The '746 Patent had seven claims. (Dkt. No. 37-1, Cleveland Decl., Ex. 2.) In the reissued patent, Defendant asserts that claims 1-4 are amended, claims 5-7 are the same and claims 8-59 are new claims. While Plaintiff does not address which claims have been amended, remained the same or are new, the Court is not in a position to make a ruling on whether the claims are "substantially identical" until after the claims are construed. See Artemi Ltd., 2013 WL 2367874, at *4.

Second, Defendant contends that the doctrine intervening rights makes the proposed amended complaint futile. Plaintiff disagrees.

The doctrine of intervening rights "protects an accused infringer from liability for infringement occurring before the reexamined patent is issued" when the claims at issue in the reissue patent are not "substantially identical" to the claims in the original patents. Visto Corp. v. Sproqit Techs., Inc., 413 F. Supp. 2d 1073, 1089 (N.D. Cal. 2006). Intervening rights is an affirmative defense that may be raised by an accused infringer when the infringed claims of the reissue patent were not in the original patent. BIC Leisure Prods, Inc. v. Windsurfing Inter., Inc., 1 F.3d 1214, 1220 (Fed. Cir. 1993).

35 U.S.C. § 252 provides:

> A reissued patent shall not abridge or affect the right of any person . . . in business who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in

> the original patent. The court before which such matter is in question may provide for the continued manufacture, use, offer for sale, or sale of the thing made, purchased, offered for sale, used, or imported as specified, or for the manufacture, use, offer for sale, or sale in the United States of which substantial preparation was made before the grant of the reissue, and the court may also provide for the continued practice of any process patented by the reissue that is practiced, or for the practice of which substantial preparation was made, before the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue.

35 U.S.C. § 252. The statute allows for two types of intervening rights:

> (1) intervening rights that abrogate liability for infringing claims added to or modified from the original patent if the accused products were made or used before the reissue, often referred to as absolute intervening rights; and (2) intervening rights that apply as a matter of judicial discretion to mitigate liability for infringing such claims even as to products made or used after the reissue if the accused infringer made substantial preparations for the infringing activities prior to reissue, often referred to as equitable intervening rights.

Marine Polymer Technologies, Inc. v. HemCon, Inc., 672 F.3d 1350 (Fed. Cir. 2012). "Intervening rights do not accrue, however, where the accused product or activity infringes a claim that existed in the original patent and remains "without substantive change" after reissue." Id. (citing Seattle Box Co. v. Indus. Crating & Packing, Inc., 731 F.2d 818, 827–28 (Fed. Cir. 1984)).

Courts have held that the decision on whether to grant intervening rights is a highly fact-specific inquiry. Artemi, Ltd., 2013 WL 2367874, at 5 (citing Westvaco Corp. v Int'l Paper Co., 991 F.2d 735, 743 (Fed. Cir. 1993) (affirming district court's denial of intervening rights, even though the infringer had established a prima facie case for intervening rights because the district court concluded that under "the factual circumstances of the case" allowing the defense would be inequitable.) Therefore, such a decision cannot be determined in a motion for leave to amend the complaint.

Moreover, Defendant's thirty (30) page opposition consisting of complex and involved legal analysis, including statutory interpretation and caselaw interpretation, as to whether the doctrine of absolute intervening rights apply to method claims, reveals that the pleading stage is not the proper time to address these issues. See

Artemi, Ltd., 2013 WL 2367874, at 5. Accordingly, Defendant has not demonstrated that the proposed amendments would be futile.

**C.    Prejudice**

Defendant contends that allowing the amendment would double the number of claims and would significantly burden the Court and SDGE based on the court's case management schedule. It contends that the scheduling order is tight as to addressing the current forty-two (42) asserted claims in the original three patents. Now, the proposed first amended complaint would add fifty-seven (57) new claims. Therefore, more than doubling the number of claims would prejudice Defendant and the Court. Alternatively, Defendant request that, if the Court permits the filing of the amendment, the current schedule be extended to account for the increase in the number of claims.

Plaintiff argues that at the time it advised SDGE of its intention to assert the reissue claims, SDGE still had 60 days to prepare its invalidity contention. It also maintains that it was SDGE's tactical decision not to provide invalidity contentions for the claims in the reissue patent until after the Court's ruling on the motion for leave to amend the complaint. However, the Court does not fault SDGE for not filing invalidity contentions for claims that have not been asserted in an operative complaint. Plaintiff also agrees to reduce the number of asserted reissue claims by at least 50% if its motion for leave to file an amended complaint is granted.

The Court concludes that Defendant has not demonstrated prejudice. First, while the reissued patent will increase the number of new claims, Plaintiff has agreed to reduce the number of asserted reissue claims by at least 50%. Moreover, the Court will allow the amendment of the case management order to take into consideration these newly asserted claims.

**Conclusion**

Based on the above, the Court exercises its discretion and GRANTS Plaintiff's motion for leave to amend the complaint. Plaintiff shall file the proposed first amended complaint within five (5) days of the filing of this order. The parties may contact the

Chambers of Magistrate Judge Skomal regarding any extensions of time on the scheduling order to allow for the addition of these claims. In addition, the scheduling order shall also include a date for the parties to conduct a tutorial on the technology involved in these patents.

    IT IS SO ORDERED.

DATED: August 21, 2013

                                    HON. GONZALO P. CURIEL
                                    United States District Judge